### A11A1317. SMITH v. THE STATE.
(717 SE2d 280)

ANDREWS, Judge.

The State indicted Jerry Smith for rape (OCGA § 16-6-1) (Count 1), incest (OCGA § 16-6-22) (Count 2), exploitation of a disabled adult (OCGA § 30-5-8) (Counts 3 and 4), and sexual battery (OCGA § 16-6-22.1) (Counts 5, 6, and 7), concerning Smith's contact with his two sisters. Smith moved to quash Count 2 on the ground that the first victim, S. A. S., was his adoptive rather than biological sister. Smith also moved to quash Counts 3 and 4 alleging exploitation of a disabled adult on grounds including that neither sister was "disabled" for purposes of OCGA § 30-5-8 and that the statute does not apply to sexual acts. After the State agreed to drop Count 4 concerning the second victim, we granted Smith's application for interlocutory appeal from the trial court's denial of his motions to quash, and now reverse because we accept the first and third of these contentions.

---

The interpretation of a statute is a question of law, which is reviewed de novo on appeal. *Frix v. State*, 298 Ga. App. 538, 539 (680 SE2d 582) (2009). "Because [a] trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review." *Sharma v. State*, 294 Ga. App. 783, 784 (670 SE2d 494) (2008). We also bear in mind that the "application of [a] statute's standards sometimes requires an assessment of the surrounding circumstances to determine if the statute is violated." *State v. Boyer*, 270 Ga. 701, 703 (1) (512 SE2d 605) (1999).

1. Smith argues that Count 2 of this indictment is insufficient as a matter of law because the Georgia incest statute does not prohibit sexual intercourse between a brother and his adoptive sister not related by blood. We agree.

Count 2 alleges that Smith "did unlawfully engage in sexual intercourse with [S. A. S.], accused's sister, knowing that he is related to said sister by adoption, in violation of OCGA § 16-6-22." An indictment is insufficient as a matter of law if the accused can admit to all of the facts in the indictment and still not be guilty of a crime. *Lowe v. State*, 276 Ga. 538, 540-541 (579 SE2d 728) (2003).

The Georgia statute prohibiting incest provides in relevant part:

A person commits the offense of incest when such person engages in sexual intercourse or sodomy, as such term is defined in Code Section 16-6-2, with a person whom he or she knows he or she is related to either by blood or by marriage as follows: . . . (3) Siblings of the whole blood or of the half blood.

OCGA § 16-6-22 (a). The State concedes that S. A. S. is not a whole or half blood sibling of Smith, but instead notes that this Court has recognized that "adoptive children enjoy the rights and privileges of a biological child, including protection from incest." *Pyburn v. State*, 301 Ga. App. 372, 373 (687 SE2d 909) (2009), citing *Edmonson v. State*, 219 Ga. App. 323, 324 (464 SE2d 839) (1995) (physical precedent as to Division 3 only; overruled on other grounds, *Collins v. State*, 229 Ga. App. 658 (495 SE2d 59) (1997)).

In *Edmonson*, we looked at the Georgia adoption and incest statutes to determine if a father could be convicted of incest for engaging in sexual intercourse and sodomy with his 13-year-old daughter. The adoption statute provides that "[a] decree of adoption creates the relationship of parent and child between each petitioner and the adopted individual, as if the adopted individual were a child of biological issue of that petitioner." OCGA § 19-8-19 (a) (2). Thus, we held that an adopted child is protected under the portion of the incest statute that prohibits sexual intercourse or sodomy with "a

person whom he or she knows he or she is related to either by blood or by marriage as follows: . . . (1) Father and child or stepchild." *Edmonson*, 219 Ga. App. at 324 (3); see also OCGA § 16-6-22 (a); *Pyburn*, 301 Ga. App. at 373 (1) (evidence was sufficient concerning charge of incest between father and adoptive daughter, citing *Edmonson*).

In *Shabazz v. State*, 259 Ga. App. 339 (577 SE2d 45) (2003) (overruled on other grounds, *Adams v. State*, 285 Ga. 744, 748 (683 SE2d 586) (2009)), however, this Court held that sexual intercourse between two siblings not related by blood was *not* a violation of the Georgia incest statute because that statute expressly applies only to siblings " 'of the whole blood or of the half blood.' " Id. at 339 (1), quoting OCGA § 16-6-22 (a) (3). Similarly, in the case before us, Smith did not commit incest because his adoptive sister is not a whole blood or half blood sibling. The trial court erred when it denied the motion to quash Count 2 on this ground.

2. Smith attacks Count 3 of the indictment on three grounds: (a) that S. A. S. is not "disabled" for the purposes of the exploitation statute, (b) that the conduct alleged does not constitute "exploitation," and (c) that OCGA § 30-5-8 (a) is unconstitutionally vague. We agree with the second of these contentions.

OCGA § 30-5-8 (a) is a criminal sanction enacted as part of the "Disabled Adults and Elder Persons Protection Act" set forth in OCGA § 30-5-1 et seq. OCGA § 30-5-8 (a) (1) provides that "[i]n addition to any other provision of law, the *abuse, neglect,* or *exploitation* of any *disabled adult* or elder person shall be unlawful." (Emphasis supplied.) OCGA § 30-5-3 defines relevant terms as follows:

> (1) "Abuse" means the willful infliction of physical pain, physical injury, mental anguish, unreasonable confinement, or the willful deprivation of essential services to a disabled adult or elder person.
>
> . . .
>
> (6) "Disabled adult" means a person 18 years of age or older who is not a resident of a long-term care facility, as defined in Article 4 of Chapter 8 of Title 31, but who is mentally or physically incapacitated or has Alzheimer's disease, as defined in Code Section 31-8-180, or dementia, as defined in Code Section 49-6-72.
>
> . . .
>
> (9) "Exploitation" means the illegal or improper use of a disabled adult or elder person or that person's resources through undue influence, coercion, harassment, duress,

deception, false representation, false pretense, or other similar means for another's profit or advantage.

(10) "Neglect" means the absence or omission of essential services to the degree that it harms or threatens with harm the physical or emotional health of a disabled adult or elder person.

We read a statute so as to give "sensible and intelligent effect" to each of its parts, always assuming that the General Assembly would not have written "mere surplusage" into law. See *English v. State*, 282 Ga. App. 552, 554-555 (2) (639 SE2d 551) (2006).

Count 3 of the indictment accuses Smith of "wilfully exploit[ing] [the victim], a disabled adult, through the illegal and improper use of said disabled adult, to wit: said accused did touch said victim in her vaginal area with his hand and his penis, in violation of OCGA § 30-5-8 (a)."

(a) (i) As a preliminary matter, we reject Smith's contention that the indictment is faulty because paragraph (a) (2) of OCGA § 30-5-8 must apply. As amended in 2009, paragraph (a) (2) makes it illegal "to *act with the specific intent* to abuse, neglect, or commit exploitation of any disabled adult," with the latter defined "[f]or purposes of this paragraph only" as someone who is *both* "(A) A resident of a long-term care facility, as defined in Article 4 of Chapter 8 of Title 31[,] *and* (B) Mentally or physically incapacitated or has Alzheimer's disease, as defined in Code Section 31-8-180, or dementia, as defined in Code Section 49-6-72." (Emphasis supplied.) OCGA § 30-5-8 (a) (2); see also Ga. L. 2009, p. 453. Smith asserts that because the victim has never lived at a long-term care facility, the indictment cannot stand. This indictment charges Smith not with *acting with the intent to exploit* the victim, however, but with *actually exploiting* the victim. Thus paragraph (a) (1) applies. See *Ware v. State*, 305 Ga. App. 229, 233 (2) (699 SE2d 435) (2010) (finding sufficient evidence of exploitation where the victim was not a resident of a long-term care facility when the exploitation took place and was thus an "elder person" as defined by OCGA § 30-5-3 (7.1) rather than a "disabled adult" as defined by OCGA § 30-5-8 (a) (2)).

(ii) S. A. S. was eighteen years old throughout the five-day period during which Smith is accused of exploiting her. There is no evidence in the record that the victim lived in a long-term care facility or that she suffered from Alzheimer's disease or dementia. Evidence was also introduced at the hearing on the motion to quash that S. A. S. reads at a first- or second-grade level, does not understand monetary denominations, needs help with feminine hygiene, occasionally has bowel movements in her pants, and, in general, cannot care for herself on a daily basis. S. A. S's case plan also shows that she scored

an IQ of 30 when she was 16 years old, well below what the Supreme Court of Georgia considers to be the borderline of mental retardation. See *Rogers v. State*, 282 Ga. 659, 660 (653 SE2d 31) (2007) ("Expert testimony established that IQ scores between 70 and 84, while indicating borderline intellectual functioning, do not indicate mental retardation"). It follows that the trial court did not err when it denied the motion to quash on the ground that S. A. S. was not "disabled" for purposes of OCGA § 30-5-8.

(b) The trial court held that "sexual misconduct" for a person's "sexual gratification" amounts to an "illegal or improper use of a disabled adult for [that person's] own profit or advantage." This holding does not comport with the plain terms of the statute.

The criminal provisions of OCGA § 30-5-8 have never been used to impose a criminal sanction for sexual acts performed on a disabled adult or elder person. See *Laster v. State*, 311 Ga. App. 360 (715 SE2d 768) (2011) (physical abuse); *Ware*, supra, 305 Ga. App. 229 (exploitation of real property); *Everett v. State*, 297 Ga. App. 351 (677 SE2d 394) (2009) (physical abuse); *Manning v. State*, 296 Ga. App. 376 (674 SE2d 408) (2009) (physical abuse); *Marks v. State*, 280 Ga. 70 (623 SE2d 504) (2005) (financial exploitation); *Eads v. State*, 193 Ga. App. 262 (387 SE2d 591) (1989) (financial exploitation). This is not surprising given that the stated purpose of the Act is "to provide protective services for abused, neglected, or exploited disabled adults and elder persons," OCGA § 30-5-2, and that nothing in the statute's definitions of these terms supports the conclusion that it was intended to regulate sexual contact with a disabled adult or elder person. "[W]hen particular things are enumerated in a statute, things not mentioned are excluded from application of the statute." *Long v. State*, 271 Ga. App. 565, 569 (610 SE2d 74) (2004). If the legislature had intended for abuse of a sexual nature to be proscribed by OCGA § 30-5-8, it would have included sexual abuse in the definition of either "abuse" in OCGA § 30-5-3 (1) or "exploitation" in OCGA § 30-5-3 (9). "A criminal statute must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted." (Citation and punctuation omitted.) *Maxwell v. State*, 282 Ga. 22, 23 (644 SE2d 822) (2007).

When the criminal penalty set forth in OCGA § 30-5-8 was first added to the Act in 1984, moreover, the statute rated a violation as a misdemeanor. Ga. L. 1984, p. 788. The statute was amended in 2001 to make the crime a misdemeanor of a high and aggravated nature, Ga. L. 2001, p. 484, and in 2003 to make it a felony. Ga. L. 2003, pp. 298-300. From 1981 to the present, then, the Act included essentially the same definition of the prohibited abuse, exploitation, and neglect.

It seems unlikely that the legislature intended for the Act to apply to sexual abuse or exploitation, acts which would qualify as felonies under other criminal statutes, when the initial penalty applied under OCGA § 30-5-8 was a misdemeanor. Instead, it appears that the legislature intended for OCGA § 30-5-8 to apply only to specifically defined nonsexual acts, and that it gradually increased the penalties for these nonsexual acts in response to a perceived need to protect disabled persons from "abuse," "neglect," and "exploitation" as defined by the Act.

In light of the Act and its history, the most reasonable construction of OCGA § 30-5-8 (a) is that the legislature did not intend for it to apply to sexual acts such as that alleged in Count 3 of this indictment. The trial court therefore erred when it denied the motion to quash on this ground.

3. Our holding in Division 2 moots Smith's assertion of error concerning the vagueness of OCGA § 30-5-8 (a). See, e.g., *Marks*, supra, 280 Ga. at 74-75 (4) (declining to rule on vagueness challenge to OCGA § 30-5-8 where trial court had failed to rule on the issue).

*Judgment reversed. Phipps, P. J., and McFadden, J., concur.*

DECIDED SEPTEMBER 21, 2011.

*Teresa L. Smith*, for appellant.
*Layla H. Zon, District Attorney, Peter H. Boehm, Assistant District Attorney*, for appellee.